UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-00809-TBR

WESTFIELD INSURANCE COMPANY                                        PLAINTIFF

v.

ESTATE OF ARTHUR GENE MCMAHAN, JR., *et al.*                      DEFENDANTS

**Memorandum Opinion**

A tragic boating accident on Lake Lanier, Georgia claimed the lives of Arthur and Melissa McMahan and Anthony and Tammy Reece. Westfield Insurance Company insured Arthur McMahan, the boat's operator, as well as his wife Melissa and his company, AM Contracting. After the Reece estates asserted claims against the McMahans' three Westfield policies, Westfield brought this action, seeking a declaration that it has no obligation to pay and defend under the policies. [DN 9.] Shortly thereafter, the Reece estates filed a wrongful death suit against Arthur McMahan's estate in state court. [DN 35-2.] They also filed a counterclaim against Westfield in this suit for its alleged violation of the Kentucky's Unfair Claims Settlement Practices Act. [DN 11.]

Two motions are pending before the Court. Westfield moves to dismiss the Reece estates' counterclaim, arguing that no bad faith claim can exist because Westfield has not yet denied the estates' claims against the policies. [DN 15.] Arthur McMahan's estate moves to dismiss the entire action, contending that this Court should decline jurisdiction pursuant to the factors set forth in *Grand Trunk Western Railroad Co. v. Consolidated Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984).

[DN 35.] All other Defendants join in that motion. [DN 37; DN 38; DN 40.] Both motions are fully briefed and ripe for adjudication. For the reasons explained below, the Court declines to exercise its discretionary jurisdiction to entertain Westfield's declaratory judgment action. Accordingly, Defendants' motions to dismiss [DN 35; DN 37; DN 38; DN 40] are GRANTED, and this case is DISMISSED WITHOUT PREJUDICE. Westfield's motion to dismiss the Reece estates' counterclaim [DN 15] is DENIED AS MOOT.

## I. Facts and Procedural History

As relevant to Defendants' motion, the facts of this case are undisputed. On July 15, 2016, two Kentucky couples, the McMahans and the Reeces, were boating on Lake Lanier in northeast Georgia. [DN 9 at 3.] Arthur McMahan was operating his 2009 Skater 388-SS powerboat; his wife Melissa, Anthony Reece, and Tammy Reece were his passengers. [*Id.*] While traveling down the lake, the boat hit a wake, became airborne, and overturned. [*Id.*] All four passengers were ejected and killed. [*Id.*]

The boat was originally purchased by A.M. Contracting Company, a Kentucky corporation. [*Id.*] On the date of the accident, the boat is believed to have been owned by either Arthur McMahan, Melissa McMahan, A.M. Contracting, or Art McMahan Muscle Motorsports, Arthur McMahan's sole proprietorship. [*Id.* at 3-4.] Westfield Insurance Company, an Ohio corporation, insured the McMahans under an estate policy and a personal umbrella policy, and A.M. Contracting under

a commercial policy. [*Id.* at 4.] The personal policies have limits of $500,000 and $3 million, respectively, and the commercial policy has a limit exceeding $75,000. [*Id.*]

Four months after the accident, attorney for the Reece estates contacted Westfield, asserting that the estates' claims against Arthur McMahan's estate exceeded Westfield's policy limits. [*Id.*] Westfield then filed the instant declaratory judgment action. It contends that several policy provisions exclude coverage for this accident. [*Id.* at 6.] Westfield named as Defendants the Estates of Arthur McMahan, Melissa McMahan, Anthony Reece, Tammy Reece, A.M Contracting Company, and Art McMahan Muscle Motorsports. Defendants answered, and the Reece estates included a counterclaim against Westfield for its alleged violation of Kentucky's Unfair Claims Settlement Practices Act, KRS 304.12-010 *et seq*. *See* [DN 11.]

Meanwhile, the Reece estates initiated proceedings against Arthur McMahan's estate in Bullitt County, Kentucky Circuit Court. *See* [DN 35-2.] There, the estates allege that McMahan operated his boat in a negligent and reckless manner, causing the deaths of Anthony and Tammy Reece. *See* [*id.*] Proceedings in that case are still ongoing.

Westfield then moved to dismiss the Reece estates' counterclaims. [DN 15.] It posits that the Reece estates cannot maintain a cause of action for bad faith against Westfield, because Westfield has not yet denied the estates' claims against the McMahan policies – the *sine qua non* of a bad faith claim. The Reece estates argue that their claims are not common-law bad faith claims, but rather statutory

3

claims under Kentucky law, and that no refusal to pay is necessary for them to prevail.

More pressing, though, is the motion to dismiss by the estate of Arthur McMahan. [DN 35.] All other Defendants join his estate in that motion. [DN 37; DN 38; DN 40.] His estate claims that this Court should decline to exercise its discretionary jurisdiction to hear this declaratory judgment case, and instead allow Westfield to litigate the scope of its coverage in the underlying state court action. Westfield responded, [DN 42], and Defendants replied, [DN 43; DN 44; DN 45; DN 46].

## II. Standard of Review

Pursuant to the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Act is an enabling act that "confers a discretion on the courts" to act "rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 287 (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 241 (1952)). In other words, the Act authorizes district courts to exercise jurisdiction, but does not impose a duty to do so. *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.,* 373 F.3d 807, 812 (6th Cir. 2004); *Allstate Ins. Co. v. Mercier,* 913 F.2d 273, 276 (6th Cir. 1990), *abrogated on other grounds by Wilton v. Seven Falls Co.,* 515 U.S. 277, (1995). A district court may not decline jurisdiction, however, as a matter of whim or personal disinclination. *Mercier,* 913 F.2d at 277.

4

### III. Discussion

The Sixth Circuit has laid down five factors for courts to consider in determining whether the exercise of declaratory judgment jurisdiction is proper:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). The Court will address each factor in turn.

#### A. Settlement of the Controversy and Clarification of Legal Relations

In insurance coverage cases, most courts consider the first two factors together because "it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555 (6th Cir. 2008). Confounding the analysis of these factors is the Sixth Circuit's acknowledgment that it created two lines of cases which, at first blush, appear at odds. *Id.* One line of cases approved of declaratory actions because they can "settle the insurance coverage controversy," while a second line of cases disapproved of declaratory actions because while they "might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy." *Id.* The Sixth Circuit explained that this incongruence results from the "different factual scenarios" that each line of cases presents. *Id.*

5

"In the first line of cases, focusing just on the insurance controversy, a technical or legal issue is often at the heart of the coverage controversy, and to the extent the facts of the underlying case matter, they are undisputed." *Emplrs. Ins. Co. of Wausau v. Duro-Last Roofing, Inc.*, No. 11-10206-BC, 2011 WL 2119360, at *6 (E.D. Mich. Mat 27, 2011). "In the second line of cases, focusing on the controversy as a whole, resolution of disputed facts in the underlying case will also resolve the disagreement about coverage." *Id.*; *Flowers*, 513 F.3d at 555 (collecting cases); *Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.*, 565 F. Supp. 2d 779, 786 (E.D. Ky. 2008). "In other words, a declaratory judgment is proper if it will only have to decide purely legal questions or engage in fact-finding that does not affect the parties in the underlying action." *Argonaut-Midwest Ins. Co. v. Johnson*, No. 3:14-CV-00395-TBR, 2014 WL 6804284, at *2 (W.D. Ky. Dec. 3, 2014) (citations and internal quotation marks omitted).

The Sixth Circuit instructs that actions like Westfield's "should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem. Otherwise confusing problems of scheduling, orderly presentation of fact issues and *res judicata* are created." *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.,* 791 F.2d 460, 463 (6th Cir. 1986). This Court believes those risks are present in this case. Here, Westfield asks this Court to declare that under its insurance contracts with the McMahans, it has no duty to indemnify or defend actions arising from the Lake Lanier boating accident. Westfield points to several policy exclusions, including exclusions "for a

6

watercraft that is being '[o]perated in or practicing for, a prearranged or organized race, speed contest or other competition,'" as well as "a watercraft that is being '[u]sed for any business purpose.'" [DN 9 at 6.] To determine whether these exclusions apply, this Court must necessarily engage in fact-finding, as the exclusions do not present pure questions of law. But it appears that these very same factual issues are also being disputed in the state court action. *See* [DN 35-2 at 3.] While this duplicative fact-finding "might clarify the legal relationship between the insurer and the insured," it will not "settle the ultimate controversy between the parties which is ongoing in state court." *Flowers*, 513 F.3d at 555 (citations omitted). The first two *Grand Trunk* factors weigh against the exercise of jurisdiction.

B. Procedural Fencing

Next, the Court must consider "whether the use of the declaratory judgment action is motivated by 'procedural fencing' or [is] likely to create a race for *res judicata*." *Id.* at 558. This factor "is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have done so for the purpose of acquiring a favorable forum.'" *Id.* (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)). Defendants argue that the timing of Westfield's action, filed four weeks after the Reece estates notified Westfield of their claim against Arthur McMahan's estate, gives rise to an inference of procedural fencing. For its part, Westfield states that its suit was not a strategic maneuver, but rather "an attempt to timely pursue

7

its investigation and have the Court determine Westfield's coverage obligations." [DN 42 at 4.]

Here, there is no direct evidence in the record that Westfield's action was motivated by procedural fencing. In the absence of such evidence, courts "are reluctant to impute an improper motive to a plaintiff." *Flowers*, 513 F.3d at 558 (citations omitted). Nevertheless, the Sixth Circuit has cautioned that "federal courts should not 'seize litigations from state courts merely because one party, normally a defendant, goes to federal court to begin his . . . defense before the state court begins the case under state law." *U.S. Fire Ins. Co. v. Albex Aluminum, Inc.*, 161 F. App'x 562, 565 (6th Cir. 2006) (quoting *AmSouth Bank*, 386 F.3d at 775) (alteration in original). In *Albex*, the Sixth Circuit held that the district court did not abuse its discretion by drawing an inference of procedural fencing from the timing of the insurance company's complaint. *Id.* In another case, *Star Insurance Co. v. Smith*, this Court's sister court concluded that an insurer engaged in procedural fencing by filing a federal action eight days before the natural plaintiff filed her state action, when the insurer had advance notice of the plaintiff's forthcoming claims. *Star Ins. Co. v. Smith*, No. 14-186-GFVT, 2015 WL 3649896, at *5 (E.D. Ky. Jun. 11, 2015). *See also Liberty Mut. Fire Ins. Co. v. Bohms*, 490 F. App'x 721, 725-26 (6th Cir. 2012) (when insurer filed suit on fifty-ninth day of sixty-day statutory notice period, district court did not abuse discretion by inferring procedural fencing).

However, Westfield's timing is not as suggestive of procedural fencing as that which occurred in *Smith* and *Bohms*. Westfield first learned of the Reece estates' claims on November 14, 2016, and filed this action one month later. [DN 9 at 4; *see* DN 1.] It appears the Reece estates filed their suit in state court on January 30, 2017, six weeks after Westfield filed in federal court. [DN 35-2 at 6.] Without more, the Court is not willing to impute a bad motive to Westfield. This third factor does not weigh against the exercise of jurisdiction.

### C. Increased Friction between Federal and State Courts

Fourth, the Court must consider "whether accepting jurisdiction would increase friction between federal and state courts." *Flowers*, 513 F.3d at 559. On this point, "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to proceed. However, the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction." *Id.* (internal citations and quotation marks omitted). The Sixth Circuit sets forth three additional sub-factors to provide additional guidance:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

9

*Id.* (citing *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.,* 373 F.3d 807, 814-15 (6th Cir. 2004)).

As explained in Part III.A of this Memorandum Opinion, resolution of this case depends upon questions of both law and fact. To determine whether coverage existed under the McMahans' Westfield policies, the Court must delve into ownership of Arthur McMahan's powerboat, as well as the nature of its use at the time of the accident. The state court must examine these same issues in determining whether Arthur McMahan's estate is liable to the Reece estates. But because the state court's inquiry is broader than an insurance coverage dispute, the scope of discovery will also be broader in that action. The state court is accordingly in a better position to evaluate these factual issues than is this Court. Finally, the third sub-factor focuses on whether the legal issues implicate important state policies. The Sixth Circuit has recognized that state courts are in a better position to resolve insurance disputes because they are more familiar with state law and that because states regulate insurers, they are best suited to identify and enforce the state public policies underlying those regulations. *E.g.*, *id.* at 561; *Bituminous*, 373 F.3d at 815. All three sub-factors suggest that by exercising jurisdiction in this case, this Court would run the risk of increasing friction between federal and state courts.

### D. Availability of Alternative Remedy

The fifth and final factor to be considered is whether a better or more effective remedy is available to the declaratory action plaintiff. *Grand Trunk*, 746

F.2d at 326. Here, Kentucky law clearly provides an alternative remedy to declaratory judgment in federal court by way of the Kentucky Declaratory Judgment Act, KRS 418.040, or by allowing Westfield to intervene in the underlying action. As the Eastern District of Kentucky has helpfully stated, "even though the insurance company is not technically a party to, and the scope of the policy's coverage is not yet at issue in, the underlying state-court litigation, it is preferable for the state court to resolve the coverage dispute because it is 'in a superior position to resolve undecided questions of state law.'" *Greenwich Insurance Co. v. Hall*, No. 11-66-ART, 2011 WL 3296067, at *2 (E.D. Ky. Aug. 1, 2011) (quoting *Flowers*, 513 F.3d at 562). While this Court and the courts of the Commonwealth are both capable of adjudicating this dispute, the state court would seem to be in a better position to dispense an effective remedy here.

## IV. Conclusion

"[I]n insurance coverage diversity cases . . . 'declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court.'" *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004) (quoting *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.,* 791 F.2d 460, 463 (6th Cir. 1986)). Here, four of the five *Grand Trunk* factors weigh against the Court's exercise of jurisdiction in this case, and the fifth is neutral. Although the Sixth Circuit has not yet elucidated the particular manner in which district courts should evaluate the *Grand Trunk*

11

factors, this Court is satisfied that, on balance, this dispute is best left to the province of the state court.

An appropriate order and judgment will follow.

CC: Counsel of Record