# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CIVIL ACTION NO. 3:16-CV-00809-TBR

WESTFIELD INSURANCE COMPANY                                    PLAINTIFF

v.

ESTATE OF ARTHUR GENE MCMAHAN, JR., *et al.*                  DEFENDANTS

**Memorandum Opinion and Order**

A tragic boating accident claimed the lives of Arthur and Melissa McMahan and Anthony and Tammy Reece. Arthur, the boat's operator, was insured by Westfield Insurance Company. Westfield brought this action, seeking a declaration that it has no obligation to pay under the policies. The Reece estates then filed a wrongful death suit against Arthur's estate in state court. Melissa's estate later filed its own claims against Arthur's estate.

All Defendants in this action moved to dismiss, arguing that the Court should decline jurisdiction based upon *Grand Truck Western Railroad Co. v. Consolidated Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984). The Court granted their motion, holding that "four of the five *Grand Truck* factors weigh against the Court's exercise of jurisdiction in this case, and the fifth is neutral." *Westfield Ins. Co. v. Estate of McMahan*, No. 3:16-CV-00809-TBR, 2017 WL 1658952, at *5 (W.D. Ky. May 1, 2017). Westfield proceeded to intervene in the state court action.

Shortly thereafter, the estates settled their claims in state court. Westfield now moves under Rule 60(b) to vacate this Court's judgment dismissing the declaratory judgment action, contending that Defendants manufactured the state court litigation in order to deprive Westfield of federal jurisdiction. [DN 49.] Defendants responded, [DN 50; DN 51], and Westfield replied, [DN 52]. Fully briefed, Westfield's motion is ripe for adjudication. For the following reasons, that motion is DENIED.

## I. Facts and Procedural History

Two Kentucky couples, the McMahans and the Reeces, were boating on Lake Lanier, Georgia on July 15, 2016.[1] [DN 9 at 3.] While traveling down the lake, Arthur McMahan's Skater powerboat overturned, ejecting and killing its four occupants. [*Id.*] The McMahans held several policies with Westfield, an Ohio insurance company. After learning of the Reece estates' claims, Westfield filed this declaratory judgment action on December 16, 2016, claiming that several policy provisions exclude coverage for the accident. [*Id.* at 6.]

The Reece estates proceeded to file a wrongful death suit against Arthur McMahan's estate in Bullitt County, Kentucky Circuit Court on January 30, 2017. [DN 35-2 at 6.] Just over a month later, on March 5, Arthur's estate moved to dismiss this action, and the Reece estates soon joined. [DN 35; DN 40.] Arthur's estate argued that "[b]ecause the wrongful death claim is pending in state court,

---

[1] The Court previously provided a more detailed summary of the facts in its prior Memorandum Opinion. *See Westfield Ins. Co. v. Estate of McMahan*, No. 3:16-CV-00809-TBR, 2017 WL 1658952 (W.D. Ky. May 1, 2017).

this court's involvement in a declaratory judgment action would not settle the ultimate controversy." [DN 35-1 at 8.] Further, it contended that any "attempt to clarify the legal relations" between the parties in this action "would prove cumbersome and futile since it would involve factual determinations that will be part of the discovery process and ultimate resolution of the state court action." [*Id.*] In the estate's view, "Westfield's arguments for non-coverage . . . rest largely on facts that will be developed at the state court level." [*Id.* at 9.]

The Court agreed. In the Court's view, the same factual issues existed in both the state and federal cases. *Westfield Ins. Co.*, 2017 WL 1658952 at *3. Because "the state court's inquiry is broader than an insurance coverage dispute," the Court recognized that the state court was "in a better position to evaluate these factual issues than" the federal court. *Id.* at *4. The Court dismissed Westfield's complaint without prejudice on May 1, and Westfield moved to intervene in the state action on May 8.

On June 12, the estates participated in a mediation of the state claims. Arthur's estate had previously declined Westfield's offer to defend it under a reservation of rights, *see* [DN 49-2], so Westfield was not represented. The mediation resulted in a total settlement of $7.5 million, with each of Melissa's, Anthony's, and Tammy's estates receiving a third. [DN 50-5.] Westfield moved to set aside the resulting agreed judgments in Bullitt Circuit Court, and then moved to vacate this Court's judgment under Rule 60(b).

3

As grounds for its motion, Westfield alleges that "Defendants' state court litigation was filed merely for the purpose of procedural posturing and to manipulate forum selection in favor of state court." [DN 49-1 at 1.] Westfield points to email communications suggesting settlement negotiations began on or about March 30, when counsel for the Reece estates first communicated the possibility to counsel for Arthur's estate. [DN 50-6 at 3.] Despite knowing settlement was imminent, Westfield says, Arthur's estate filed a brief in this Court that "continued to stress that 'th[e] factual overlap counsels against the exercise of federal jurisdiction.'" [DN 52 at 4.] According to Westfield, "the facts and circumstances surrounding this litigation gives rise to a *prima facie* case that a misrepresentation, whether willful or blindly, occurred in this case," necessitating the vacation of the Court's judgment. For their part, the estates deny Westfield's allegations.

## II. Discussion

Westfield moves for relief from the Court's judgment under Rule 60(b)(3) and (6). The Court will examine each subsection in turn.

Rule 60(b)(3) provides that "the court may relieve a party . . . from a final judgment" on the basis of "fraud . . . , misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)-(b)(3). In the Sixth Circuit, fraud under Rule 60(b)(3) "refers to an opposing party's 'knowing misrepresentation of a material fact, or concealment of the same when there is a duty to disclose, done to induce another to act to his or her detriment.'" *Travelers Cas. & Sur. Co. of Am. v. J.O.A. Const.*

4

*Co.*, 479 F. App'x 684, 693 (6th Cir. 2012) (quoting *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 456 (6th Cir. 2008)). To prove that fraud has been committed upon the Court, the moving party must show "conduct (1) on the part of an officer of the court, (2) that is directed to the 'judicial machinery' itself, (3) that is intentionally false, wilfully blind to the truth, or is in reckless disregard for the truth, (4) that is a positive averment or is concealment when one is under a duty to disclose, and (5) that deceives the court." *Workman v. Bell,* 245 F.3d 849, 852 (6th Cir. 2001) (citing *Demjanjuk v. Petrovsky,* 10 F.3d 338, 348 (6th Cir. 1993)). The moving party must demonstrate "by clear and convincing evidence[] that one or more of the three kinds of misbehavior referred to in [Rule 60(b)(3)] occurred." *Lester v. Wow Car Co.*, 675 F. App'x 588, 591 (6th Cir. 2017) (quoting *Jordan v. Paccar,* 97 F.3d 1452, 1996 WL 528950, at *9 (6th Cir. 1996) (per curiam)). If so, prejudice is presumed, and the burden "shifts to the non-moving party to prove by clear and convincing evidence that its misbehavior did not have a prejudicial effect on the outcome of the litigation." *Id.* (citation omitted).

To succeed under Rule 60(b)(3), then, Westfield is "obliged to show by clear and convincing evidence that defendants deliberately engaged in some act of fraud, misrepresentation or other misconduct that adversely affected the fairness of the proceedings." *Thurmond v. Wayne Cty. Sheriff Dep't*, 564 F. App'x 823, 827 (6th Cir. 2014) (citation omitted). It has not done so. Westfield's motion rests upon its allegation that Defendants, who are adverse to one another in the underlying state suit, colluded together with the goal of depriving Westfield of federal jurisdiction.

5

But little evidence supports this notion.

To be clear, in its reply brief, Westfield states that its "argument under Rule 60(b)(3) is not an indictment on the character or professional conduct of counsel for the defendants. The motion identifies an omission of information that should have been disclosed, and even if omitted under a good faith mistaken belief, it was purposely not disclosed. For this reason, Westfield seeks relief from the Court's Judgment [DN 48] under Rule 60(b)(3)." [DN 53-1 at 3.]

First, nothing suggests the state suit itself was filed for a fraudulent purpose. Although the Reece estates instituted their wrongful death suit after Westfield brought its declaratory judgment action, Defendants were positioned adverse to one another as early as November 2016, when the Reece estates filed claims against Arthur's estate in the Bullitt District Court probate proceedings. *See* [DN 50-2; DN 50.] This occurred before either the state or federal suit came about. So the mere fact that the wrongful death action was second-in-time is insufficient to show Defendants manufactured that suit solely to keep the coverage dispute in state court.

Westfield also says the relatively quick settlement and lack of discovery conducted in the state action constitutes evidence of collusion. In Westfield's view, these facts show Defendants never intended to fully litigate that case. But another perspective, one espoused by the estates' attorneys, is that there was no use prolonging the wrongful death suit when liability was clear and Arthur's estate had

6

only limited resources. This seems supported by the Georgia Department of Natural Resources incident report, which attributed the boating accident to "excessive speed" and "careless/reckless" operation. [DN 50-1 at 1.] Westfield does not explain why its explanation for the quick settlement is any more likely than Defendants'.

Lastly, Westfield argues that even if the wrongful death suit itself was not fraudulent, Defendants made certain misrepresentations to the Court during briefing on their motion to dismiss. It points out that Arthur's estate relied heavily on the anticipated factual overlap between the state and federal cases, even as settlement talks were ongoing. True enough, it appears that the Reece estates posed their first settlement offer on March 30. [DN 50-6 at 3.] Three days later, on April 2, Arthur's estate filed its reply, arguing (among other things) that "the circumstances surrounding Arthur's operation of the boat at the time of the accident . . . are important factual issues that will inform the resolution of the claims" in both cases. [DN 43 at 5.] The remaining Defendants soon joined in the estate's reply. [DN 44; DN 45; DN 46.] Westfield says Defendants could not have made or adopted this statement in good faith while knowing that a settlement was in the works.

The Court disagrees. While settlement was certainly a possibility when Arthur's estate replied, it was far from a certainty. Via sworn affidavit, counsel for the Reece estates says Arthur's estate did not respond to the settlement demand until after the Court's Order and Judgment in this case. [DN 50-6 at 3.] Counsel for Arthur's estate says he "fully anticipated that extensive discovery . . . would occur in the State Action. It was not until the Jun. 12 mediation and settlement that we

7

knew such discovery would <u>not</u> be needed." [DN 51-1 at 3.] Without more, the Court cannot say with any conviction that Defendants' settlement talks were a material fact knowingly omitted from their briefs.

Westfield has failed to show by clear and convincing evidence that Defendants committed fraud upon the Court, such that it would be entitled to relief under Rule 60(b)(3). Alternatively, Westfield relies upon Rule 60(b)(6), which "permits courts to grant relief from judgment for 'any other reason that justifies relief.'" *Taylor v. Streicher*, 469 F. App'x 467, 468 (6th Cir. 2012) (quoting Fed. R. Civ. P. 60(b)(6)). But that subsection applies only "in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Id.* (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)). In addition to exceptional circumstances, the movant must also show "(1) lack of prejudice to the non-moving party; (2) a meritorious defense; and (3) lack of culpability for the adverse judgment." *Travelers*, 479 F. App'x at 693 (citing *Ex.-Im. Bank of U.S. v. Advanced Polymer Scis., Inc.,* 604 F.3d 242, 247 (6th Cir. 2010)). The Sixth Circuit further instructs that "the decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Blue Diamond Coal Co. v. Trs. of UMWA Combined Ben. Fund*, 249 F.3d 519, 529 (6th Cir. 2001) (citation and internal quotation marks omitted). Like subsection (3), Rule 60(b)(6) requires proof by clear and convincing evidence. *Id.* (citations

8

omitted).

Westfield has not demonstrated that it is entitled to Rule 60(b)(6) relief. Its only argument is that "the change in circumstances merits relief under [Rule] 60(b)(6) so not as to inequitably divest Westfield, a diversity plaintiff, of its federal forum selection for its declaratory judgment action." [DN 49-1 at 4.] Failing to grant relief, it says, "would reward the Defendants for their procedural posturing." [*Id.* at 7.] On these facts, the Court does not believe that Westfield has shown it is the victim of "exceptional or extraordinary circumstances." *Taylor*, 469 F. App'x at 468. Examples of circumstances warranting Rule 60(b)(6) relief include, among other things, "an applicable change in decisional law, coupled with some other special circumstance," *Blue Diamond Coal*, 249 F.3d at 524 (citations omitted); an attorney's egregious conduct, *Doyle v. Mutual of Omaha Ins. Co.*, 504 F. App'x 380, 383 (6th Cir. 2012); a party's repeated violation of a consent judgment and injunction, *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 420 F. App'x 522, 529 (6th Cir. 2011); and a party's mental incapacity, *DirecTV, Inc. v. Turk*, 282 F. App'x 382, 386 (6th Cir. 2008). Of course, none of those circumstances are present in this case. Westfield cites no authority, persuasive or otherwise, in which a court granted Rule 60(b)(6) based upon facts similar to the case at bar.

Neither does the balance of equities tip in Westfield's favor. Granted, Westfield is diverse from the other parties to this case, but finds itself unable to litigate in federal court. While this might be an uncommon scenario, it is not unimaginable. For instance, take a defendant who is sued in state court by both

9

diverse and non-diverse plaintiffs. If the defendant attempts to remove the suit to federal court, the court will surely grant the plaintiffs' motion to remand – the parties are not diverse, as required by 28 U.S.C. § 1331. More than a year passes, and the state court dismisses the claims by the non-diverse plaintiffs. Any further attempts at removal by the defendant will also be rebuffed, because 28 U.S.C. § 1446(c)(1) places a one-year bar on the removal of such actions. This hypothetical concludes with a defendant who is unable to litigate in federal court, despite being diverse from the other parties. But neither the defendant in this hypothetical, nor Westfield in this case, can convert its desire to be heard in a federal forum into a principle of equity justifying an end-run around this Court's jurisdictional requirements.

This is especially true when, as here, the party seeking federal jurisdiction has a full and fair opportunity to litigate in state court. Westfield does not suggest that the courts of this Commonwealth are unable or unwilling to adjudicate what amounts to a coverage dispute, or to do "justice . . . in light of all the facts." *Blue Diamond Coal*, 249 F.3d at 529. To the contrary, it appears that litigation concerning that very issue is currently ongoing in the Bullitt Circuit Court. This Court must respect the Commonwealth and its courts, and "their status as coequal sovereigns in a federal system." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Westfield will still have its case heard, just not here. Whatever equitable concerns this might raise, they do not outweigh this Court's weighty interest in seeing its judgments remain final.

## IV. Conclusion and Order

It may be the case that had the state wrongful death suit not been ongoing when the Court issued its prior Order and Judgment, the Court would have exercised its declaratory judgment jurisdiction and adjudicated Westfield's claims on their merits. However, this Court's task is not to render judgments based upon what might happen, but rather to deal with the facts as they exist. When things change, Rule 60(b) allows courts to take a second look, but only under limited circumstances, none of which exist in this case. Westfield has not shown that Defendants engaged in fraud or collusion, nor has it shown that requiring it to litigate coverage in state court is an "exceptional or extraordinary circumstance where principles of equity mandate relief." *Franklin v. Jenkins*, 839 F.3d 465, 472 (6th Cir. 2016) (cleaned up). Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED;**

Plaintiff Westfield Insurance Company's motion to vacate [DN 49] is **DENIED.**

CC: Counsel of Record